UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                          :
ELDREDGE BLALOCK,                                         :
                                    Petitioner,           :
                                                          :        08 Civ. 7528 (JPO)
                      -against-                           :
                                                          :        MEMORANDUM AND
JOSEPH T. SMITH,                                          :        ORDER
                                    Respondent.  :
                                                          :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

On August 26, 2008, Petitioner Eldredge Blalock, proceeding *pro se*, filed a petition

(Dkt. No. 1) seeking a writ of *habeas corpus* under 28 U.S.C. § 2254 to vacate a judgment of

conviction entered on November 28, 1999 by the Supreme Court of the State of New York, New

York County.  Petitioner is currently incarcerated pursuant to his sentence of two concurrent

indeterminate terms of (1) imprisonment of twenty-two years to life for murder in the second

degree and (2) imprisonment of five to fifteen years for conspiracy in the second degree.  *See*

*People v. Blalock*, 36 A.D.3d 540, 540 (2007) (affirming Petitioner's conviction).

Petitioner seeks a writ of *habeas corpus* based on a claim brought pursuant to *Brady v.*

*Maryland*, 373 U.S. 83 (1963).  His petition argues that the state court was incorrect in

determining that he was not deprived of due process because prosecutors neglected to turn over

information in their possession which Petitioner could have used to further a defense theory at

trial.  This Court referred the petition to Magistrate Judge Henry Pitman, who issued a thorough

and well-reasoned report recommending that Petitioner be denied a writ of *habeas corpus*.

(Report and Recommendation, Dkt. No. 38 ("Rec.").)  In an Objection to the Magistrate's Report

and Recommendation (Dkt. No. 44 ("Objection" or "Obj.")), Petitioner argues that Magistrate

Judge Pitman was incorrect to review the petition with the level of deference mandated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  AEDPA requires that the state court proceedings must have "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" before a court may grant *habeas* relief.  28 U.S.C. § 2254(d)(1).  Petitioner argues instead that his claim is procedurally barred and that the state court's decision constituted a fundamental miscarriage of justice.  Therefore, he asserts, his petition for a writ of *habeas corpus* should be granted on the merits of his *Brady* claim.

For the reasons set forth below, the Court denies the petition.

## I.    Background

### A.    Facts Giving Rise to Petitioner's Conviction[1]

Petitioner's conviction resulted from the murder of Evaline Santana in the Lower East Side of Manhattan on November 25, 1997.  The evidence at trial proved that Petitioner and two others attacked Santana as the result of a debt of narcotics money that Santana owed Petitioner.

Petitioner was a member of a heroin distribution organization in lower Manhattan from 1994 through 1997.  Santana also sold heroin for this organization.  The prosecution's main witness at trial, Betsey Laureano ("Laureano"), bought heroin from both Petitioner and Santana.

On the evening of November 25, 1997, Laureano was home in her apartment with her children and nephew when Petitioner arrived.  After entering, Petitioner pushed Laureano into the kitchen, placed a gun to her head, and told her to find Santana so that he could speak with her.  After Laureano told him she did not want to be involved, Petitioner threatened to hurt her children should she not comply.  Laureano found Santana outside of the apartment building and

---

[1] Unless otherwise noted, this background is drawn from Magistrate Judge Pitman's Report and Recommendation. (Dkt. No. 38.)

invited her inside but did not alert her that Petitioner was waiting for her upstairs.  When
Laureano and Santana arrived back at Laureano's apartment, they found Petitioner waiting in the
hallway with two other men.  Petitioner told Santana that he wanted to speak with her on the
building's roof.

While on the roof, Santana told the group that she wanted to leave to purchase snacks.
Petitioner demanded that she pay the money owed to him for the narcotics he had given her to
sell.  Santana responded that she would not have the money until December 1, 1997 because she
had given the heroin to someone else who had botched the deal.  Santana then left to go to the
store with Laureano's daughter.  While Santana was gone, one of Petitioner's associates told
Laureano to leave when Santana returned because Petitioner's group wished to speak to Santana
alone.  When Santana and Laureano's daughter returned to the roof, one of Petitioner's
associates pulled out a gun and grabbed Laureano's daughter.  After Laureano's daughter was
released, both Laureano and her daughter left the roof.

Later that evening, Laureano went to a landing that gave her a view of the roof.  From
that position, Laureano saw a knife and a gun lying on the roof.  Laureano also saw Santana
lying on the roof with blood around her mouth and wrists, and the Petitioner sitting on top of her
legs.  Santana looked unconscious.  Back in her apartment, Laureano went to a window in her
bedroom which was next to the roof.  From there she saw Petitioner and his associates dragging
or carrying something.  Laureano did not contact the police and stayed in her apartment for the
rest of the night.

The next morning, Santana was found dead on the roof of a building adjacent to
Laureano's apartment building.

### B.    Procedural Background

#### 1.    State Court Proceedings

On June 7, 1999, Petitioner's trial began before Justice Charles J. Tejada of the New York Supreme Court.  At trial, Laureano served as the prosecution's main witness concerning the events preceding Santana's death.  Other persons also testified, including Laureano's daughter, residents of Laureano's apartment building, and the police officers who investigated Santana's death.  On July 1, 1999, the jury found Petitioner guilty of murder in the second degree and conspiracy in the second degree.[2]

Petitioner's judgment of conviction was entered on November 28, 1999.  Petitioner appealed his conviction to the Appellate Division of the Supreme Court for the First Department. The Appellate Division affirmed petitioner's conviction on January 25, 2007, and the New York Court of Appeals denied leave to appeal on May 3, 2007.

On July 28, 2008, Petitioner filed a *pro se* motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") Section 440.10.  Petitioner argued that his judgment should be vacated based on a police report containing notes from an interview of Melissa Quiles, who did not testify at Petitioner's trial.  Petitioner asserted that the report constituted newly discovered evidence favorable to the defense, which the prosecution failed to disclose to defense counsel.

The police report contains an interview with Quiles in which she describes a robbery that occurred on or about November 22, 1997 at "Humpty's apartment."  The report states that Quiles and Santana, along with a few others, were at Humpty's apartment during the robbery and that shortly thereafter, Santana revealed to Quiles that she was responsible for arranging the robbery.

---

[2] The jury also found Petitioner guilty of felony murder with kidnapping as the underlying felony.  The trial court overturned that portion of the verdict because Petitioner was acquitted of the substantive kidnapping charge.

The New York Supreme Court denied Petitioner's § 440.10 motion on October 7, 2009 on two grounds. First, the court held that the police report did not constitute *Brady* material because the information it contained "was clearly hearsay and trial counsel was attempting to impeach Laureano through contradiction on collateral matters." (Indictment # 3277/98 Decision and Order, included in Attachment 1 to Reply to Respondent's Answer and Memorandum of Law in Opposition, Dkt. No. 36-1 ("Sup. Ct. Decision"), at 39 of 58.) "Moreover," the court found that Petitioner had failed to submit the proper affidavits in support of his motion. (*Id.* at 39-40 of 58.)

Petitioner sought leave to appeal the decision to the Appellate Division, but the Appellate Division denied such leave on March 12, 2010.

### 2.    This Proceeding

Petitioner filed his *habeas corpus* petition, dated July 29, 2008, with this Court on August 26, 2008. (Dkt. No. 1.) The case was referred to Magistrate Judge Pitman for a report and recommendation on September 11, 2008. (Dkt. No. 3.) On June 1, 2010, Petitioner filed a motion for leave to amend his *pro se* petition (Dkt. No. 9), which Magistrate Judge Pitman granted on March 4, 2011 (Dkt. No. 13). The same day, Petitioner's amended petition was filed with the Court. (Amended Petition for Writ of *Habeas Corpus*, Dkt. No. 14 ("Pet.").)

### a.    The Amended Petition

In his amended petition, Petitioner brings two claims. First, Petitioner contends that the New York State Supreme Court incorrectly interpreted and applied *Brady v. Maryland*, 373 U.S. 83 (1963), when the court determined that the prosecutor's failure to turn over a police report did not violate Petitioner's constitutional rights. (Pet. at 12.) Petitioner's second claim challenges the trial court judge's failure to instruct the jury on the accomplice-corroboration rule, a New

York procedural rule requiring corroboration of statements by a witness who was an accomplice of the accused.  (Pet. at 18.)

### b.  Magistrate Judge Pitman's Report and Recommendation

Magistrate Judge Pitman recommended that the Court deny Petitioner *habeas* relief as to both claims and recommended that a certificate of appealability not be issued.

Magistrate Judge Pitman first addressed and rejected Petitioner's challenge to the state court's refusal to instruct the jury on the accomplice-corroboration rule.  Magistrate Judge Pitman concluded that a *habeas* claim predicated on an alleged violation of New York's accomplice-corroboration rule does not assert a violation of a federally protected right and must be rejected as a ground for *habeas* relief.  (Rec. at 13-15.)  Petitioner does not challenge Magistrate Judge Pitman's recommendation on this claim.  (*See* Obj.)

Second, Magistrate Judge Pitman addressed and rejected Petitioner's *Brady* challenge to his conviction.  The magistrate judge determined that the state court's ruling should be reviewed with AEDPA deference because the state court's decision rested on alternative grounds, one of which constituted a decision on the merits of Petitioner's *Brady* claim.  (Rec. at 21.)  Judge Pitman then reviewed the merits of the *Brady* claim and found that it failed on the merits because Petitioner failed to demonstrate (1) that the evidence was suppressed and (2) that the evidence was material.  (*Id.* at 16.)  Consequently, Magistrate Judge Pitman recommended that Petitioner be denied a writ of *habeas corpus*.  (*Id.* at 37.)

Finally, Magistrate Judge Pitman recommended that a certificate of appealability not be issued under either 28 U.S.C. § 2253 or 28 U.S.C. § 1915(a)(3).  (*Id.* at 37-38.)  Under 28 U.S.C. § 2253 and relevant case law, Judge Pitman found that (1) Petitioner did not make a substantial showing of the denial of a constitutional right and (2) reasonable jurists could not disagree about

whether the petition should be resolved in a different manner.  (*Id.*)  He stated that any appeal

from the Report and Recommendation, or from any Order issued thereon, would not be taken in

good faith and thus the court should not issue certification pursuant to 28 U.S.C. § 1915(a)(3).

(*Id.*)

### c.   Petitioner's Objections to the Report and Recommendation

Petitioner raises three objections to the magistrate judge's Report and Recommendation.

First, Petitioner objects that instead of applying AEDPA deference, the magistrate judge should

have determined that the *Brady* claim is procedurally barred.  (Obj. at 3.)  Petitioner then argues

that his claim should be reviewed on the merits.  (*Id.* at 3-4.)  Presumably, Petitioner believes

that the court should allow him to vault the procedural bar and obtain review on the merits

because the preponderance of the evidence shows that he was actually innocent.  Second,

Petitioner objects that his claim succeeds on the merits.  (*Id.* at 5-10.)  Third, Petitioner objects

that he should be issued a certificate of appealability because reasonable jurists could disagree as

to whether the petition should be resolved in a different manner.  (*Id.* at 11.)

## II.   Standard of Review

Pursuant to 28 U.S.C. § 636, a federal *habeas* court conducts a *de novo* review of issues

objected to by the petitioner in his or her response to a magistrate judge's report and

recommendation.  28 U.S.C. § 636(b).  Those parts of the magistrate judge's report and

recommendation to which the petitioner does not object may be adopted absent a finding of clear

error.  *Id.*; *see also Smith v. Rock*, 554 F. Supp. 2d 505, 511 (S.D.N.Y. 2008).

Accordingly, the Court reviews Petitioner's *Brady* claim *de novo*.  Judge Pitman's

recommendation on the state court's refusal to instruct the jury on the accomplice-corroboration

rule is reviewed for clear error.

**III.    Discussion**

As discussed below, the Court finds that Petitioner's *habeas corpus* petition is timely and that his *Brady* claim is exhausted.  This discussion then addresses each of Petitioner's objections in turn.  First, the Court concludes that under current Second Circuit precedent, it is an open question whether the Court should find Petitioner's *Brady* claim procedurally barred or whether the court may review the claim with AEDPA deference.  However, second, the Court concludes that the question need not be resolved because Petitioner's *Brady* claim fails on the merits.  Third, the Court concludes that Petitioner should be denied a certificate of appealability.  No clear error is apparent in the magistrate judge's conclusions regarding the state court's refusal to instruct the jury on the accomplice-corroboration rule, and hence that issue is not addressed in this discussion.

**A.    Threshold Issues**

To obtain review by a federal court, a petition for a writ of *habeas corpus* must be filed in a timely manner and the petitioner's claims must be exhausted.  28 U.S.C. §§ 2244(d)(1)(A), 2254(b)(1).  The Court concludes that Petitioner's *habeas corpus* petition is reviewable because it was filed within the statute of limitations and because Petitioner has exhausted his *Brady* claim.

**1.    Timeliness**

In order to be reviewable by a federal court, a petition for a writ of *habeas corpus* must be filed within the one-year statute of limitations imposed by AEDPA.  28 U.S.C. § 2244(d)(1)(A).  The one-year statute of limitations period for filing a *habeas corpus* petition begins to run when the conviction becomes "final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  If a timely direct

appeal is taken in state court, and *certiorari* is not sought from the United States Supreme Court, the conviction becomes final ninety days after the New York Court of Appeals has affirmed a conviction or denied leave to appeal. *See Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001). A properly filed state collateral proceeding, such as a proceeding under New York Criminal Procedure Law § 440.10, will toll the statute of limitations beginning on the date a *pro se* petitioner gives his or her motion to prison officials for mailing. *Fernandez v. Artuz*, 402 F.3d 111, 112-15 (2d Cir. 2005). Time is tolled during the collateral proceeding until the date the state court issues a final order, such that further appellate review under state law is no longer available. *See Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Saunders v. Senkowski*, 587 F.3d 543, 549 (2d Cir. 2009).

Petitioner's judgment of conviction was entered on November 28, 1999 by the Supreme Court of the State of New York, New York County. The Appellate Division affirmed petitioner's conviction on January 25, 2007, and the Court of Appeals denied leave to appeal on May 3, 2007. The one-year statute of limitations began to run on August 1, 2007, ninety days after his conviction became final. The statute of limitations was tolled beginning on July 28, 2008, when Petitioner filed a § 440.10 motion to vacate his judgment of conviction. Petitioner filed his *habeas corpus* petition, dated July 29, 2008, while the statute of limitations was tolled. (Dkt. No. 1.) The limitations period ran for a total of 362 days—less than the full year allowed by AEDPA. Thus, the petition was timely.

### 2.   Exhaustion

Petitioner's *Brady* claim has been exhausted because (1) the Supreme Court of New York denied his § 440.10 motion to vacate the judgment based upon the exclusion of the police report and (2) the Appellate Division denied his request for leave to appeal.

Under AEDPA, 28 U.S.C. § 2254(b)(1), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."  A state remedy is considered exhausted when a petitioner has presented the federal constitutional claim asserted in the petition to the highest state court and adequately informed the state court of both the legal and factual bases for the federal claim.  *Picard v. Connor*, 404 U.S. 270, 276-77 (2d Cir. 1971); *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 191-92 (2d Cir. 1982) (*en banc*).

A petitioner need not have exhausted a *Brady* claim on direct appeal because it is an inherently off-the-record claim that only comes to light after the trial phase is over and a conviction has been entered.  Instead, a petitioner raises a *Brady* claim by filing a collateral attack on the judgment of conviction, for example, under New York Criminal Procedure Law Section 440.10.

On July 28, 2008, the petitioner in this case filed a § 440.10 motion to vacate his judgment of conviction based upon his *Brady* material claim.  On October 7, 2009, the New York Supreme Court denied Petitioner's § 440.10 motion.  Petitioner's request to appeal the decision to the Appellate Division was denied on March 12, 2010.  As a result, Petitioner's *Brady* claim has been exhausted.

### B.      Standard of Review on Petitioner's *Brady* Claim

As discussed below, the standard of review is different for procedurally barred claims and claims denied on their merits.  It is an open question in the Second Circuit whether a state-court dismissal like the dismissal of this Petitioner's § 440.10 motion is a procedural bar or whether it

constitutes a decision on the merits.  While most courts in this Circuit to address the issue have held that such a dismissal constitutes a decision on the merits, it is not necessary to determine the proper standard of review in this case because Petitioner's claim fails on the merits in any event.

### 1.      Legal Standards for *Habeas Corpus* in Federal Courts

A *habeas* petition is not a means to re-litigate every issue previously determined in state court. *Herrera v. Collins*, 506 U.S. 390, 400-01 (1993).  A prisoner seeking *habeas* relief is required under 28 U.S.C. § 2254(a) to show by a preponderance of the evidence that he or she is being held in the custody of the State "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  In addressing a *habeas* petition, a court must defer to the assessments of the strength of the evidence and credibility of the witnesses that were made by the jury and may not substitute its own view of the evidence in their place.  *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996).

If a claim has been adjudicated on the merits in state court, the reviewing court must give the state court's decision deference upon review.  Under AEDPA, 28 U.S.C. § 2254(d), a court may not grant a federal *habeas* writ "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ."  *Id.*  "An increment of incorrectness beyond error is required to allow habeas relief, and although the increment need not be great, we must be able to adequately identify why we found the state-court decision to be objectively unreasonable."  *Jimenez v. Walker*, 458 F.3d 130, 147 (2d Cir. 2007) (internal quotation marks, alterations, and citation omitted).

If a claim has been rejected in state court on the basis of an "adequate and independent" state procedural rule, the claim is procedurally barred and a *habeas* court may not grant the petitioner a writ unless the petitioner can (1) show "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Mobley v. Senkowski*, 2003 WL 22952846, at *2 (E.D.N.Y. Nov. 12, 2003) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (internal quotation marks omitted).  A petitioner bringing a procedurally barred *Brady* material challenge to his conviction may demonstrate a "fundamental miscarriage of justice" and allow the reviewing *habeas* court to reach the merits of his claim by showing that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.  The petitioner thus is required to make a stronger showing than that needed to establish prejudice."  *Id*.

If a court rejects a claim by stating that the claim is procedurally barred *and* that it is without merit, then there is an adequate and independent bar to *habeas* review which prevents a federal *habeas* court from reaching the merits of the claim.  *Coleman*, 501 U.S. at 733; *see, e.g.*, *Brown v. Perlman*, No. 07 Civ. 8672, 2008 U.S. Dist. LEXIS 37546, at *36-60 (S.D.N.Y. May 8, 2008).  However, if the state court rejects the claim alternatively on the merits *or* on procedural grounds, the holding is too ambiguous to constitute a procedural bar to *habeas* review.  *See* *Jimenez*, 458 F.3d at 145-46 (2d Cir. 2006); *Fama v. Comm'r of Corr. Serv.*, 235 F.3d 804, 810 (2d Cir. 2001).

12

## 2.    Indeterminate Standard of Review in this Case

Contrary both to the magistrate judge's opinion and Petitioner's argument, the Court concludes that the state court denied Petitioner's § 440.10 motion to vacate on two independently sufficient grounds.[3]  The state court first denied Petitioner's *Brady* claim on the merits, stating that the police report was "clearly hearsay and trial counsel was attempting to impeach Laureano through contradiction on collateral matters."  (Sup. Ct. Decision at 39 of 58.)  Second, and "*[m]oreover*," the state court denied Petitioner's claim because, under CPL §§ 440.30(1) and 440.30(4)(b), "a post judgment CPL 440.10 motion to vacate a judgment of conviction requires the defendant to support his motion with a proffer of specific evidence in credible form" and Petitioner did not attach the appropriate affidavits.  (*Id.* at 39-40 (emphasis added).)  The use of the word "moreover" signals that the second reason is in addition to, rather than in lieu of, the first ground on which the state court decided.

Had the state court decided on alternate grounds, it would be unnecessary to determine whether dismissal under CPL § 440.30(4)(b) constitutes a procedural bar to review.  Instead, because the state court decided on two independently sufficient grounds, in order to determine the appropriate standard of review, the Court would have to determine whether dismissal pursuant to § 440.30(4)(b) constitutes a decision on the merits or a dismissal pursuant to a procedural rule.

While the Second Circuit has decided that dismissal pursuant to CPL § 440.30(4)(c) constitutes a judgment on the merits, *Garcia v. Portundo*, 104 F. App'x 776, 779 (2d Cir. 2004), there is a division among district courts in the Circuit as to whether the same is true of CPL §

---

[3] The magistrate judge determined that the court denied Petitioner's claim on two alternate grounds, one of which constituted a decision on the merits of Petitioner's claim.  As a result, the magistrate judge concluded that AEDPA deference was the appropriate standard of review.  Petitioner argues that the State court did not decide on two grounds at all, but proffered only one reason for the rejection of his *Brady* claim, which was a state procedural ground.

440.30(4)(b).[4]  However, as Magistrate Judge Pitman correctly points out, the Court is free to

decide this case on the merits first, as "it is not the case that the procedural-bar issue must

invariably be resolved first; only that it ordinarily should be." *Dunham v. Travis*, 313 F.3d 724,

729 (2d Cir. 2002) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  The Second Circuit

has held that "hurdling the procedural questions to reach the merits of a habeas petition is

justified in rare situations, for example, if the underlying issue were easily resolvable against the

habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."

*Id.* (internal quotation marks, citation, and alterations omitted).  At least one court has gone on to

reject a claim on the merits instead of resolving the question whether a dismissal pursuant to §

440.30(4)(b) is a procedural bar.  *See White v. West*, 2010 WL 5300526, at *24 (E.D.N.Y. Dec.

6, 2010) ("[T]his Court need not take a position on th[e] issue because Petitioner's claim fails on

both procedural and substantive grounds.").

  Here, too, the Court need not resolve the question of procedural bar because Petitioner's

claim fails on the merits.  The internal split between district courts in this Circuit provides a

reason to address the merits of the *habeas* petition before resolving the procedural question.  As

discussed below, Petitioner's claim fails on the merits and would therefore fail under AEDPA

review, which allows a federal *habeas* court to grant a writ only if the *habeas* court can identify

why it found the state court decision "objectively unreasonable" by an "increment of

incorrectness beyond error." *Jimenez*, 458 F.3d at 147.  And, because Petitioner's claim fails on

the merits, he cannot show that denying him *habeas* relief would result in a "fundamental

miscarriage of justice."  The Court may thus bypass the question whether a dismissal pursuant to

---

[4] *Compare Williams v. McGinnis*, No. 04 Civ. 1005, 2006 WL 1317041, at *10 (E.D.N.Y. May 15, 2006) (holding that denial under § 440.30(4)(b) due to inadequacy of petitioner's papers would be an independent and adequate state law ground), *with Lopez v. Ercole*, No. 09 Civ. 1398, 2010 WL 1628994, at *19 (S.D.N.Y. Apr. 21, 2010) (collecting cases) (concluding that a dismissal under § 440.30(4)(b) constitutes a decision on the merits).

§ 440.30(4)(b) constitutes a procedural bar and directly address Petitioner's *Brady* claim on its merits.

### C.      The Merits of Petitioner's *Brady* Claim

Petitioner's *Brady* claim fails on the merits because the Petitioner has not demonstrated that the police report was "suppressed" evidence or that it was "material" evidence for *Brady* purposes.

"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *United States v. Santos*, No. 10-3218-CR, 2012 WL 2298887, at *2 (2d Cir. June 19, 2012) (quoting *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999)) (internal quotation marks omitted). A defendant need not specifically request the disclosure of such evidence at trial, as "[u]nder *Brady* and its progeny, the government has an affirmative duty to disclose favorable evidence known to it, even if no specific disclosure request is made by the defense." *Leka v. Portuondo*, 257 F.3d 89, 99-100 (2d Cir. 2001) (quoting *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995)).

In order to find a *Brady* violation, "a court need not conclude that the undisclosed evidence would have been admissible at trial." *Hughes v. Phillips*, 457 F. Supp. 2d 343, 360 (S.D.N.Y. 2006) (citing *United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002)). Instead, a court need only find any one of the following: that "(1) all or part of the document was admissible; (2) it could have led to the discovery of admissible evidence[;] or (3) it would have been an effective tool in disciplining a witness during cross-examination, by refreshment of recollection or otherwise." *Id.* at 104 (quoting *Gil*, 297 F.3d at 104) (internal quotation marks omitted).

Here, even assuming the police report can be considered "favorable," Petitioner has not demonstrated that the police report was "suppressed" or is "material" for *Brady* purposes, and therefore the petition fails. Accordingly, the Court does not reach the question whether Petitioner satisfies any of the three tests related to admissibility.

### 1.     The Suppression Requirement

A defendant does not satisfy the suppression requirement "if the defendant, directly or through counsel, either knew, or should have known, of the essential facts permitting him to take advantage of that evidence." *Lamberti v. United States*, 22 F. Supp. 2d 60, 66-67 (2d Cir. 2001) (internal quotation marks, citation, and alteration omitted); *accord United States v. Jackson*, 345 F.3d 59, 73 (2d Cir. 2003). The underlying rationale for this rule "is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government." *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993) (quoting *United States v. LeRoy*, 687 F.2d 610, 619 (2d Cir. 1982), *cert. denied*, 459 U.S. 1174 (1983)) (internal quotation marks omitted).

In *Zackson*, the court found that the petitioner did not demonstrate that a witness's "expansive role" as a cooperating witness constituted "suppressed" evidence for *Brady* material purposes. 6 F.3d at 919. Prior to trial, the petitioner was aware of a witness's role as a confidential informant, though the petitioner was not aware of the extent of the witness's cooperation. *Id.* at 918-19. The petitioner had knowledge of the existence of testimony that revealed evidence of the witness's larger role, but had not been informed of the exact substance. *Id.* This knowledge, the court believed, made the petitioner aware that the extent of the witness's role at least deserved further investigation. *Id.* at 919. As a result, the court found that the

petitioner had sufficient access to the underlying facts that would have allowed him to take advantage of any exculpatory material that might have been available.  The Court therefore concluded that the evidence was not "suppressed."  *Id.*

Here, Petitioner argues that the police report constitutes "suppressed evidence" because (1) the defense was not in possession of the report at the time of trial and (2) the defense was not aware that Quiles was a potential witness.  The Court concludes that the police report cannot be considered "suppressed evidence" because Petitioner was aware of the essential facts of the alleged robbery and was aware of the identities of persons with knowledge potentially relevant to the "robbery" defense.

While Petitioner was not in possession of the exact details of the police report at the time of trial, Petitioner had sufficient access to the underlying facts of the alleged robbery.  Petitioner concedes in both his § 440.10 motion and in his amended *habeas* petition that at the time of trial, he was aware of the version of events contained in the police report.  (Eldridge Blalock Affidavit in Support of Motion to Vacate a Judgment of Conviction ("Blalock Aff.") at ¶ 35, included in Ex. I to Appendix in Support of Answer Opposing Petition, Dkt. No. 8; Pet. at 5.)  It appears that, prior to trial, the prosecution had turned over the handwritten notes of an interview of Laureano dated December 14, 1997, which address Santana's putative involvement in the Humpty robbery.[5]  (*See* Interview of Laureano, dated December 14, 1997 ("Laureano Interview"), included in Exhibit 4 of Blalock Aff.)  Defense counsel even sought to question Laureano about connections between Humpty and the murder during her cross-examination but was prevented from doing so by the trial court.  (State Court Transcript, Dkt. No. 25, at 1186.)

---

[5] There is no contention that these notes were withheld by the prosecution.  Petitioner attached these notes to his § 440.10 motion, in which he stated: "The defense sought to introduce evidence that [Laureano] made a handwritten statement, dated November 30, 1997, telling police that [Santana] was killed because she set up a man named 'Humpty.'"  (Blalock Aff. at ¶ 35; Pet. at 5).  Thus, it appears that Laureano's handwritten statement was properly disclosed to defense counsel.

In addition to having knowledge of the underlying facts of the robbery, Petitioner was aware of the identities of several persons with knowledge potentially relevant to the "robbery" defense.  Prior to trial, Petitioner was aware that Laureano had informed the police that someone named "Aida" told her that Santana was murdered because of her involvement in setting up the robbery at "Humpty's."  (Blalock Aff. at ¶ 35; Pet. at 5; *see also* Laureano Statement, ("Laureano Statement"), included in Exhibit 4 of Blalock Aff.)  The handwritten notes turned over by the prosecution also contain the names of several individuals named in the undisclosed police report, such as "Juice" and "Jason."  (*See* Laureano Interview.)

That defense counsel not only knew of the underlying facts of the robbery at "Humpty's," but had the names of several individuals related to that event, shows that Petitioner was substantially aware of the information contained in the police report.  Accordingly, Petitioner has not demonstrated that the police report was "suppressed" for *Brady* purposes.  Because a petitioner must satisfy every prong of the *Brady* test in order to state a *Brady* claim and Petitioner has failed one prong, Petitioner's *Brady* claim fails on its merits.

### 2.      The Materiality Requirement

Petitioner also has not shown that the police report constituted "material" evidence.  The Supreme Court has held that "the materiality standard for *Brady* claims is met when 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"  *Banks v. Dretke*, 540 U.S. 668, 698 (2004) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).  Put another way, there must be a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *U.S. v. Avellino*, 136 F.3d 249, 256 (2d Cir. 1998) (quoting *Kyles*, 514 U.S. at 433-34) (internal quotation marks omitted); *accord Banks*, 540 U.S. at 699.

The Second Circuit has stated that information coming within the scope of materiality includes "not only evidence that is exculpatory, *i.e.*, going to the heart of the defendant's guilt or innocence, but also evidence that is useful for impeachment, *i.e.*, having the potential to alter the jury's assessment of the credibility of a significant prosecution witness." *Leka v. Portuondo*, 257 F.3d 89, 99 (2d Cir. 2001) (quoting *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir.1998)).

When undisclosed impeachment evidence is "possibly useful to the defense," but "not likely to have changed the verdict," the undisclosed impeachment evidence is "not material in the *Brady* sense." *United States v. Persico*, 645 F.3d 85, 111 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 593 (2011) and 132 S. Ct. 1637, 182 L. Ed. 2d 246 (2012) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)) (internal quotation marks omitted).  Impeachment evidence is not material for *Brady* purposes when it "merely furnishes an additional basis on which to impeach a witness whose credibility has already shown to be questionable." *Mack v. Conway*, No. 10-3414-pr, 2012 WL 1232951, at *2 (2d Cir. Apr. 13, 2012) (quoting *United States v. Wong*, 78 F.3d 73, 79 (2d Cir .1996)) (internal quotations marks omitted); *see also Persico*, 645 F.3d at 111.

Here, the police report does not put the "whole case in such a different light as to undermine confidence in the verdict" and therefore cannot be considered "material" evidence.

First, the police report cannot be considered material evidence for impeachment purposes because Laureano had already been impeached.  In Laureano's handwritten statement dated November 30, 1997, Laureano told police that she heard Santana was murdered because of her involvement in setting up the "Humpty" robbery.  (Laureano Statement)  As explained above, this handwritten statement appears to have been disclosed to defense counsel at the time of trial. On both direct and cross examination, Laureano then admitted lying to the police prior to

implicating Petitioner because she was afraid that Petitioner would hurt her and her children. (State Court Transcript, Dkt. No. 25, at 1168, 1170-72, 1176, 1181, 1198.)

Second, the police report cannot be considered material because corroborating that the robbery *in fact occurred* would not exculpate Petitioner or put any of the evidence against him in a different light.  This is because neither the police report nor any other adduced evidence links the robbery to Santana's murder.  Even if the police report was admitted into evidence and defense counsel had been allowed to challenge the trial court's preclusion of questions pertaining to the robbery, the effect would have been, at most, to simply corroborate that Santana was involving in setting up a robbery prior to her murder.  There is no evidence that Humpty even knew that Santana had been involved in arranging the robbery, let alone any evidence that he had acted on that knowledge.

Furthermore, in view of the evidence against Petitioner presented at trial, the evidence impeaching Laureano or confirming the robbery does not undermine confidence in the verdict. The verdict against Petitioner rested on the eyewitness testimony of several witnesses both during and after the murder.  In the police precinct, Laureano's daughter had independently identified the three men involved in the murder, including Petitioner, from a line-up.  Another resident, unconnected to Laureano, testified that he overheard a conversation at the apartment building elevator between Petitioner's two accomplices discussing the murder in detail, including the motive for the murder.  The testifying resident then picked the same two accomplices out of a line-up as Laureano and Laureano's daughter had.  (*See* Rec. at 33; *see also* Brief for Respondent, appended as Exhibit C to Appendix in Support of Answer Opposing Petition, Dkt. No. 8, at 34-37.)  Based on the evidence presented against Petitioner, there is no reasonable

probability that a jury would have reached a different verdict about Petitioner's guilt if the jurors had had more evidence that Santana had arranged a robbery prior to her murder.

Even if the police report evidence can be considered favorable, there is not a reasonable probability that, had the police report been produced at trial, the verdict would have been different. Therefore, the police report cannot be considered "material" evidence, and this is an additional, independently sufficient reason that Petitioner's *Brady* claim fails on the merits.

## IV.    Conclusion

For the foregoing reasons, Eldredge Blalock's petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is DENIED.

A certificate of appealability will not issue because Petitioner has not made a substantial showing of the denial of a constitutional right and reasonable jurists could not disagree about whether the petition should be resolved in a different manner. *See* 28 U.S.C. § 2253(c)(2); *Middleton v. Attorneys Gen.*, 396 F.3d 207, 209 (2d Cir. 2005). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith.

The Clerk of Court is directed to close this case.


SO ORDERED.

Dated: New York, New York
         August 13, 2012

_____
J. PAUL OETKEN
United States District Judge